[Civ. No. 5899.   Third Appellate District.—April 7, 1938.]

MARY CHANDLER, Respondent, v. THOMAS QUINLAN
et al., Appellants.

H. K. Landram for Appellants.

C. Ray Robinson, Norman S. Menifee, Gregory P. Maus-
hart, James D. Garibaldi and Willard B. Treadwell for Re-
spondent.

PULLEN, P. J.—This is an appeal from a judgment award-
ing damages for personal injuries sustained by plaintiff, a
guest riding with defendants.   The automobile in question
was owned by Selleck, and at the time of the accident was
being driven by Quinlan, with the consent and permission of
the owner.   There seems to be little dispute as to the facts
of the case, which substantially are as follows:

Mrs. Chandler, the plaintiff, together with Miss Berryman,
Selleck and Quinlan left Redwood City on a pleasure trip
to go to Toll House in Fresno County, approximately 200
miles from Redwood City.   They stopped at Los Banos for

lunch, and upon leaving Los Banos Mr. Quinlan took the wheel, Mr. Selleck riding in the front seat with him, and Miss Berryman and Mrs. Chandler occupied the rumble seat.

Upon leaving Los Banos Quinlan drove at about 45 miles an hour, increasing the speed gradually until they had attained a speed of approximately 55 to 60 miles an hour. Some few miles out of Los Banos they approached an ''S'' curve. As they were approaching the turn both plaintiff Mrs. Chandler and Selleck told Quinlan to slow down on account of the approaching curve. To one of these warnings Quinlan stated, ''Oh, I guess I can make it.'' Quinlan, the driver, was warned a second time by Selleck, who said, ''Slow down, Tommy, there is a bad curve ahead of us,'' and to this Quinlan again replied that he thought he could make it. The car was proceeding at a too rapid speed to negotiate the turn, as the result of which it skidded onto the gravel shoulder of the highway, causing the car to get out of control, going into a ditch, striking a fence, and causing the injuries to plaintiff here complained of.

The weather was clear and the highway approaching the curve was straight, and not only was the curve known to the driver, but some 300 feet before entering the curve there was a state highway sign upon the road indicating an ''S'' curve.

Upon these facts the question here for determination is whether the jury were justified in finding Quinlan guilty of wilful misconduct. The reviewing courts of this state have had this question before them on many occasions, and it is not necessary here that we review all of these many cases or attempt to redefine what is meant by wilful misconduct.

Respondent cites and relies largely upon the recent case of *Parsons* v. *Fuller,* 8 Cal. (2d) 463 [66 Pac. (2d) 430], wherein the Supreme Court reviewed many of the recent cases dealing with wilful misconduct, and quoted from *Norton* v. *Puter,* 138 Cal. App. 253 [32 Pac. (2d) 172], as follows: ''Wilful misconduct depends upon the facts of a particular case, and necessarily involves deliberate, intentional or wanton conduct in doing or omitting to perform acts, with knowledge or appreciation of the fact, on the part of the culpable person, that danger is likely to result therefrom.''

In the case of *Parsons* v. *Fuller, supra,* the court also said: ''We believe that the court properly emphasizes knowledge

or appreciation 'that danger is likely to result'. To us it seems clear that one who, while driving an automobile, knowingly flirts with danger, and without necessity or emergency compelling him 'takes a chance' on killing or injuring himself and others, who may be so unfortunate as to be riding with him, is guilty of wilful misconduct.''

Here the evidence discloses that defendant Quinlan, when about 500 yards distant, could plainly see the curve he was approaching and continued at the rate of from 50 to 60 miles an hour into the curve, and was warned not only by two of his passengers but by the state highway insignia of an ''S'' curve. Under these circumstances it would seem that one indulging in such conduct, had some knowledge that danger was likely to result therefrom, and was knowingly flirting with danger without necessity compelling him taking a chance. and was guilty of wilful misconduct.

In *Jones* v. *Hathway*, 22 Cal. App. (2d) 316 [70 Pac. (2d) 681], the driver was proceeding from 55 to 60 miles an hour up to an ''S'' curve in an underpass. Judgment was rendered in favor of plaintiff, a guest, and upon considering the verdict the court said: ''As far as substantial evidence in support of the judgment is concerned, it would seem at least questionable, if nothing more appeared than the fact that over the protest of plaintiff, defendant drove the automobile at night at the rate of 55 to 60 miles per hour, but when to that fact is added the further conditions . . . it would be contrary to common sense to attribute to any reasonable person a lack of appreciation of the fact that such driving of an automobile was likely to result disastrously.''

In the instant case we are not dealing alone with the rate of speed. Here was the presence of an ''S'' curve known to the driver, and if that fact impressed upon his guests the existence of an imminent danger, it is not unfair to assume that a similar consciousness that his act was likely to result in injury to his guests, also occurred or should have occurred to the driver.

This court said in the recent case of *Hagglund* v. *Nelson*, 23 Cal. App. (2d) 348 [73 Pac. (2d) 265]:

''In the present case we are satisfied the defendant did not drive his automobile directly in front of the rapidly approaching passenger train with the deliberate intention of injuring his guest, but we are convinced that he did act

with wanton and reckless disregard of the consequences of his conduct with knowledge, or the possession of facts which were equivalent to actual knowledge, that injury to his guest was likely to occur. Such conduct renders him guilty of wilful misconduct."

We find no error in the order or the judgment of the court, and the same are affirmed.

Thompson, J., and Plummer, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 2, 1938.