[L. A. No. 16174. In Bank.—July 1, 1937.]

JOYCE WEBER et al., Appellants, v. BRUCE ROBERT PINYAN et al., Respondents.

F. L. Richardson for Appellants.

Wright, Monroe, Thomas & Glenn for Respondents.

NOURSE, J., *pro tem.*—This action was brought under the provisions of section 1714¼ of the Civil Code reading in part: "Every owner of a motor vehicle shall be liable and responsible for the death of or injury to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner"; and section 141¾ of the

California Vehicle Act reading in part: "Any person who as a guest accepts a ride in any vehicle, . . . and while so riding as such guest receives or sustains an injury, shall have no right of recovery against the owner or driver or person responsible for the operation of such vehicle. . . . Nothing in this section contained shall be construed as relieving the owner or driver or person responsible for the operation of a vehicle from liability for injury to or death of such guest proximately resulting from the intoxication or wilful misconduct of such owner, driver or person responsible for the operation of such vehicle."

Plaintiffs are husband and wife suing for injuries received by the wife as the result of the operation by the defendant Pinyan of an automobile owned by defendant Bird. The complaint alleges that while defendant Pinyan "was driving said automobile at a high and reckless rate of speed, said defendant attempted to embrace the plaintiff, Joyce Weber, and attempted to pull the plaintiff over toward him, and in doing so placed his right hand and arm around the shoulders and body of the plaintiff and attempted to kiss her and in so doing took one or both hands off the steering wheel of said automobile and while he was attempting to embrace and kiss and hug the plaintiff, Joyce Weber, as aforesaid, said automobile ran off the road and ran into said bank and was wrecked and the plaintiff, Joyce Weber, was injured in the manner aforesaid : . . and in addition to the said defendant's attempt to embrace the plaintiff, Joyce Weber, as aforesaid, he was at said time intoxicated, which intoxicated condition of said defendant at the said time was then unknown to said plaintiff, Joyce Weber". It is further alleged that the injuries suffered by said plaintiff "were due to the carelessness, negligence, recklessness, intoxication and willful misconduct of the defendant Bruce Robert Pinyan", and that the said defendant was then operating the car with the consent and permission of the owner, Norma Bird. The latter severed from her codefendants and demurred generally and specially. The record does not disclose that service was made upon, or appearance made by, any other defendant. The demurrer was sustained, and judgment was entered that plaintiffs take nothing against defendant Bird and that the action be dismissed. The appeal is from this judgment.

■ The question involved is: "whether the owner of an automobile, who allows it to be driven by another, is liable for injury to a guest due to the intoxication and willful misconduct of the permitted operator of said automobile". A decision of this question involves an interpretation of section 1714¼ of the Civil Code and of section 141¾ of the California Vehicle Act as those sections read at the time of the accident on May 18, 1935. The Civil Code section is generally referred to as the imputed negligence act, the section of the vehicle act as the guest law. Both were passed at the same session of the legislature, and each had a definite and well-recognized purpose—the imputed negligence act was designed to place upon the owner of a motor vehicle liability for injuries in its operation by another with his permission, express or implied, and thus hold the owner answerable for his failure to place the instrumentality in proper hands; the guest law was enacted to protect the owner against fraudulent claims of those riding as guests who, in many cases, were the only witnesses to the accident. ■ Since the imputed negligence statute created a new right of action, giving a remedy against a party who would not otherwise be liable, it must be strictly construed. Such was the holding in *Cook* v. *Superior Court of Los Angeles County,* 12 Cal. App. (2d) 608, 611 [55 Pac. (2d) 1227, 1228], where the court cited 59 Corpus Juris, page 1129, reading: " 'A statute creating a new liability, or increasing an existing liability, or even a remedial statute *giving a remedy against a party who would not otherwise be liable,* must be strictly construed in favor of the persons sought to be subjected to their operation.' " Numerous cases were cited in support of the text to which was added *Leppard* v. *O'Brien,* 225 App. Div. 102' [232 N. Y. Supp. 454] (affirmed in 252 N. Y. 563 [170 N. E. 144]), a case involving a similar statute and in which the court said: "If a statute creates a liability where otherwise none would exist, or increases a common-law liability, it will be strictly construed." In *Swing* v. *Lingo,* 129 Cal. App. 518, 526 [19 Pac. (2d) 56], a case under section 1714¼ the court said: "Since the statute imposes a new and unusual liability which partakes of the nature of a penalty, it should not, at least, receive a construction favoring the imposition of such liability. (*Snell* v. *Bradbury,* 139 Cal. 379, 382 [73 Pac. 150] ;

*Merrill* v. *Los Angeles Cotton Mills, Inc.,* 120 Cal. App. 149 [7 Pac. (2d) 329].)''

In the light of this rule of strict construction the wording of the imputed negligence act fixing liability upon the owner of a motor vehicle for injuries ''resulting from negligence in the operation of such motor vehicle'' would be easy of interpretation if it were not for the decisions which confuse the meaning of the word ''negligence''. Since the guest law limits the right of recovery of a guest to a showing of wilful misconduct or intoxication, it is manifest that the plaintiffs herein have no cause of action against the respondent unless they can show that wilful misconduct, and intoxication as used in one statute are the same as negligence as used in the other. Hence, in construing these statutes we must proceed under the rule of strict construction as to the imputed negligence act fixing the liability upon the owner in the first instance, and under the rule that, as to the guest law when applied to imputed liability, the elements of intoxication and wilful misconduct are exceptions to the denial of a right of recovery and that this exception must also be strictly construed.

In the early case of *Richardson* v. *Kier,* 34 Cal. 63, 75 [91 Am. Dec. 681], the court adopted the definition of negligence taken from Broom's Legal Maxims, page 329, reading: '' 'Negligence is the omission to do something which a reasonable man, guided by those considerations which ordinarily regulate the conduct of human affairs, would do, or doing something which a prudent and reasonable man would not do; moreover it is not absolute or intrinsic, but always relative to some circumstance of time, place or person.' ''

In *Tognazzini* v. *Freeman,* 18 Cal. App. 468, 473 [123 Pac. 540, 543], where the question of negligence and wilful misconduct was involved, the court said: ''The evident conflict in the trial court's presentation of the vital issue in the case to the jury cannot be reconciled, or the charge of the court as a whole harmonized, upon the theory that the term 'negligence' as used by the court in the instruction complained of, was broad enough in its legal signification to cover both the careless and the wilful acts of the defendants. Ordinarily, and likewise in the law, there is a decided and well-defined distinction between mere 'negligence' and 'wilfulness'. Negligence is opposed to diligence, and signifies

the absence of care. It is negative in its nature, implying a failure of duty, and excluding the idea of intentional wrong, and it follows that the moment a person wills to do an injury he ceases to be negligent. (Citing cases.)

"Notwithstanding the confused and indiscriminate use at times of the terms 'negligence' and 'willfulness' by judges and text-writers, it is certain that the weight of authority supports the view that those terms have a distinct and well-defined meaning, which is clearly pointed out in *Holwerson* v. *St. Louis etc. Co.*, 157 Mo. 216 [50 L. R. A. 850, 57 S. W. 770, 774], where it is said: 'By "negligence" is meant ordinary negligence—a term the significance of which is reasonably well fixed. By gross negligence is meant exceeding negligence—that which is mere inadvertence in a superlative degree. . . . By "wilful negligence" is meant not strictly negligence at all, to speak exactly, since negligence implies inadvertence, and whenever there is an exercise of will in a particular direction there is an end of inadvertence, but rather an intentional failure to perform a manifest duty, which is important to the person injured, in preventing the injury, in reckless disregard of the consequences as affecting the life or property of another. Such conduct is not negligence in any proper sense, and the term "wilful negligence", if these words are to be interpreted with scientific accuracy, is a misnomer.' "

In *Helme* v. *Great Western Milling Co.*, 43 Cal. App. 416, 421 [185 Pac. 510], the court said: " 'Wilful misconduct' means something different from and more than negligence, however gross. The term 'serious and willful misconduct' is described by the supreme court of Massachusetts as being something 'much more than mere negligence, or even gross or culpable negligence', and as involving 'conduct of a *quasi* criminal nature, the intentional doing of something either with the knowledge that it is likely to result in serious injury, or with a wanton and reckless disregard of its possible consequences'. (*In re Burns*, 218 Mass. 8 [Ann. Cas. 1916A, 787, 105 N. E. 601].) The mere failure to perform a statutory duty is not, alone, willful misconduct. It amounts only to simple negligence. To constitute 'willful misconduct' there must be actual knowledge, or that which in the law is esteemed to be the equivalent of actual knowledge, of the peril to be apprehended from the failure to act, coupled with a con-

scious failure to act to the end of averting injury. (*Smith* v. *Central etc. Ry. Co.,* 165 Ala. 407 [51 So. 792].)'' In the same decision a definition and explanation of the meaning of gross negligence is given which is of importance here in view of the 1931 amendment to the guest law which removed that element from the statute. The opinion reads: '' 'Gross negligence' is the entire failure to exercise care, or the exercise of so slight a degree of care as to justify the belief that there is an entire indifference to the interest and welfare of others. It is that entire want of care that raises a presumption of conscious indifference to consequences. It implies a total disregard of consequence, without the exertion of effort to avoid it. (Citing cases.) While, in a case of gross negligence, various terms have been used to express the mental state of the actor, the idea attempted to be conveyed seems to be that the act done or omitted to be done was done or omitted willfully and intentionally. (20 R. C. L. 23.) In *Astin* v. *Chicago etc. Co.* (143 Wis. 477 [128 N. W. 265, 31 L. R. A. (N. S.) 158]), the Wisconsin supreme court says that 'gross' negligence is not characterized by inadvertence, but 'by the absence of any care on the part of the person having a duty to perform to avoid inflicting an injury to the person or property rights of another, by recklessly or wantonly acting or failing to act to avoid doing such injury, evincing such an utter disregard of consequences as to suggest some degree of intent to cause such injury'. '' The foregoing definitions have been frequently quoted and cited where the courts were endeavoring to draw the lines between ordinary negligence, gross negligence, and wilful misconduct. (*Malone* v. *Clemow,* 111 Cal. App. 13 [295 Pac. 70]; *Whiteford* v. *Yuba City Union H. S. Dist.,* 117 Cal. App. 462 [4 Pac. (2d) 266]; *Howard* v. *Howard,* 132 Cal. App. 124 [22 Pac. (2d) 279]; *Turner* v. *Standard Oil Co.,* 134 Cal. App. 622 [25 Pac. (2d) 988, 990]; *Kastel* v. *Stieber,* 215 Cal. 37 [8 Pac. (2d) 474]; *Meek* v. *Fowler,* 3 Cal. (2d) 420 [45 Pac. (2d) 194]; *Gimenez* v. *Rissen,* 12 Cal. App. (2d) 152 [55 Pac. (2d) 292].)

In *Meek* v. *Fowler, supra,* this court approved the definition of wilful misconduct found in *Turner* v. *Standard Oil Co., supra,* reading (p. 626): ''Wilful misconduct, within the meaning of this statute, may then be defined as intentionally doing something in the operation of a motor vehicle which

should not be done or intentionally failing to do something which should be done under circumstances disclosing knowledge, express or to be implied, that an injury to a guest will be a probable result.'' ▇ We also adopted the following language taken from *Howard* v. *Howard, supra,* page 129: ''While the line between gross negligence and wilful misconduct may not always be easy to draw, a distinction appears from the definition given in that gross negligence is merely such a lack of care as may be presumed to indicate a passive and indifferent attitute toward results, while wilful misconduct involves a more positive intent actually to harm another or to do an act with a positive, active and absolute disregard of its consequences. ▇ It seems clear that in excluding all forms of negligence as a basis for recovery in a guest case, the legislature must have intended that to permit a recovery in such a case the thing done by a defendant must amount to misconduct as distinguished from negligence, and that this misconduct must be wilful. ▇ While the word 'wilful' implies an intent, the intention referred to relates to the misconduct and not merely to the fact that some act was intentionally done. In ordinary negligence, and presumably more so in gross negligence, the element of intent to do the act is present and any negligence might be termed misconduct. But wilful misconduct as used in this statute means neither the sort of misconduct involved in any negligence nor the mere intent to do the act which constitutes negligence. Wilful misconduct implies at least the intentional doing of something either with a knowledge that serious injury is a probable (as distinguished from a possible) result, or the intentional doing of an act with a wanton and reckless disregard of its possible result.''

In *Meek* v. *Fowler, supra,* page 426, it was also said that: ''Such intent and knowledge of probable injury may not be inferred from the facts in every case showing an act or omission constituting negligence for, if this were true, any set of facts sufficient to sustain a finding of negligence would likewise be sufficient to sustain a finding of wilful misconduct. As has been repeatedly declared, ' ''Wilful misconduct'' means something more than negligence—more, even than gross negligence'. (*North Pac. S. S. Co.* v. *Industrial Acc. Com.,* 174 Cal. 500, 502 [163 Pac. 910]; *Kastel* v. *Stieber,* 215 Cal. 37, 47 [8 Pac. (2d) 474].)''

In *Turner* v. *Standard Oil Co., supra,* the court had under consideration the effect of the deletion from the statute of the element of gross negligence and endeavored to arrive at the intention of the legislature in the use of the term "wilful misconduct". In this respect the court said (p. 626): "It seems clear from the history and the wording of this statute that it was the intention of the legislature to confine the right to recover in guest cases to instances where there appears either an intent to injure the guest or a degree of recklessness greater and beyond the gross negligence which was formerly recognized as sufficient. Negligence is carelessness, whether greater or less in degree, and tends to be negative in character while wilful misconduct is something of a more positive nature involving the intentional doing of a wrongful act, with the intent to harm another, with an utter disregard of the consequences, or with knowledge that an injury to a guest will be a probable result. All of these situations include actual or implied knowledge that injury is probable."

In *Gimenez* v. *Rissen, supra,* the court had under consideration the provisions of section 62 (b) of the California Vehicle Act which declared that the person signing the application of a minor to drive a motor vehicle was liable for "any negligence of the minor". The action was brought by a guest, and rested upon charges of wilful misconduct of the minor in the operation of the car. The court relied upon many of the cases herein cited in holding that the imputation of negligence did not include acts of wilful misconduct. In this connection it was said (pp. 159, 160): "If 'wilful misconduct' is a species of negligence, then it follows that the liability for 'wilful misconduct' is imputed to the person signing the minor's application, but if 'wilful misconduct' is not embraced within the term 'negligence', then the rules of statutory interpretation would seem to dictate that the legislature's intent was to confine such imputation of liability to cases of negligent conduct on the part of the minor. Support is given to this conclusion by a review of the history of automobile legislation in this state, particularly as it is found in the so-called guest statute. Section 141¾ of the California Vehicle Act, up to 1931, made the owner or driver or person responsible, liable for injuries proximately resulting to a guest from the intoxication, wilful misconduct, or gross negligence of such driver. In 1931

the legislature, by amendment to the guest statute, struck therefrom the words 'gross negligence', thereby restricting liability for injuries to a guest to those injuries proximately resulting from the intoxication or wilful misconduct of the driver. This legislative action, it seems to us, was clearly intended to remove from the statute any liability for even gross negligence, and would indicate that the legislature understood the distinction between negligence and wilful misconduct, and desired to limit liability in this class of cases (except for intoxication) solely to wilful misconduct as distinguished from negligence or even gross negligence.

"Appellants earnestly contend that the term 'negligence', as used in the act, is broad enough in its legal signification to cover both the careless and the wilful acts of a minor, but the courts seem to hold that there is a well-defined distinction between mere 'negligence' and 'wilfulness'; that negligence is opposed to diligence and signifies the absence of care; that it is negative in its nature, implying a failure of duty, and excludes the idea of intentional wrong; that it accordingly follows that the moment a person wills to do an injury he ceases to be negligent. (Citing numerous cases.)" Reference was made in the Gimenez opinion to the significant fact that in 1935 the legislature, through the adoption of section 352 of the Vehicle Code, which carried the provisions of section 62 (b) of the Vehicle Act, inserted the words "wilful misconduct", thereby making the signer of the application of the minor liable for both negligence and wilful misconduct. We should add here that the word "intoxication" was not added, and that it would seem from this that the legislature clearly intended not to impute liability to the signer for injuries caused by the intoxication of a minor. This view is strengthened by the fact that in subdivision (b) of the same section similar liability was imposed upon the "parents or the person or guardian having custody of the minor". It is the settled rule in this state that a parent is not liable for the tort of his minor child without participation in the fault by the parent. (*Hagerty* v. *Powers,* 66 Cal. 368 [5 Pac. 622, 56 Am. Rep. 101]; *Figone* v. *Guisti,* 43 Cal. App. 606, 611 [185 Pac. 694]; *Hudson* v. *Von Hamm,* 85 Cal. App. 323, 326 [259 Pac. 374]; 20 R. C. L., p. 627.) Hence, when we apply the rule of strict construction heretofore noted as governing statutes of this nature, the rule of the

Gimenez case limiting the liability of the parent to acts of "negligence" is sound.

In this connection it is well to refer to the provisions of the guest law as carried into the new Vehicle Code. When the accident herein occurred in May, 1935, section 141¾ of the California Vehicle Act, as amended by Statutes 1931, page 1693, provided that: "Any person who as a guest accepts a ride . . . shall have no right of recovery against the owner or driver or person responsible for the operation of such vehicle. . . . Nothing in this section contained shall be construed as relieving the owner or driver or person responsible for the operation of a vehicle from liability for injury . . . proximately resulting from the intoxication or wilful misconduct of such owner, driver or person responsible for the operation of such vehicle." The Vehicle Code enacted in 1935 provides in section 403 as follows: "No person who as a guest accepts a ride in any vehicle upon a highway without giving compensation for such ride, nor any other person, has any right of action for civil damages against the driver of such vehicle or against any other person legally liable for the conduct of such driver on account of personal injury to or the death of such guest during such ride, unless the plaintiff in any such action establishes that such injury or death proximately resulted from the intoxication or wilful misconduct of said driver." It will be noted that the new section omits the "owner" and the "person responsible for the operation of the vehicle" and inserts "person legally liable for the conduct of such driver". This checks with section 352 of the Vehicle Code adopted at the same time, which makes the person signing the application of a minor for a license, and the parent or guardian of the minor, responsible for injuries resulting from the negligence "or wilful misconduct" of the minor. Thus, under the statute as enacted in 1935, a parent, guardian, or person signing the application of a minor is a "person legally liable for the conduct" of the minor who would be liable for injuries to a guest under section 403 when the injuries arose from the wilful misconduct of the driver of the guest car. But intoxication is not mentioned in that section of the code, and if these persons are liable for any conduct of the minor other than that of negligence and wilful misconduct in the operation of the car it is because of some other relation not included in these

sections of the code, or it may be because of the separate act of negligence of such persons in knowingly giving the minor the opportunity to commit the tort complained of.

*Walling* v. *Rugen,* 3 Cal. App. (2d) 471 [39 Pac. (2d) 827], and *Taylor* v. *Joyce,* 4 Cal. App. (2d) 612 [41 Pac. (2d) 967], which have been cited, are not in conflict with these views. In the Walling case the owner of the car was joined with the driver on the theory of his imputed negligence under section 1714¼ of the Civil Code, but the owner was also sued in a separate count charging independent negligence on the theory that he wilfully permitted an incompetent driver to operate the car. The owner there argued that he could be held under the first cause of action only, and the decision merely found no prejudicial error in an instruction relating to the separate cause of action. In the Taylor case the injury occurred to a guest of the owner who was present in the car while it was being operated by his intoxicated chauffeur. The liability of the owner rested upon his negligence, which was actual and not imputed, and the provisions of section 1714¼ were not involved and were not discussed. These cases rest upon the same principle herein referred to as covering the liability of a parent for the tort of a minor. If an owner is himself guilty of negligence in knowingly permitting an intoxicated or incompetent person to operate his car he may be liable for his own negligence in so doing—not for the tort of the operator, except for the special statute which imputes to him the negligence of the operator. Since this is a new liability and a new penalty it must be strictly construed as applying to acts of negligence as distinguished from acts of wilful misconduct or those resulting from intoxication. This is so because wilful misconduct and driving a car while intoxicated both presuppose an intentional and positive act often in violation of positive law which the owner may assume that the actor will not do.

Some of the decisions argue the question on the basis of whether the distinction between simple negligence and wilful misconduct is a difference in kind or degree. Academically the argument is interesting but it leads to no practical results. Whether the difference be in kind or degree is immaterial so long as it is conceded that there is a difference. With this concession the conclusion fairly follows that the legislature knew that there was a legal distinction between

these two elements and that, when it specified the one element in the statute, it did not intend to include the other. If this were not so there is no apparent reason why the legislature should have added "wilful misconduct" in the section relating to liability for the acts of a minor when it omitted those words from the section of the same act relating to the liability of the owner generally.

█ Finally, the guest law in effect at the time of the accident provided that a guest "shall have no right of recovery" for injuries sustained. The new statute provides that a guest shall have no "right of action for civil damages". Both contain the exception covering wilful misconduct and intoxication. A right of recovery for injuries and an action for civil damages both relate to the same right of action—one in tort for negligence. The clear purpose of this portion of the statute was to declare that a guest should have no right of recovery for injuries arising from negligence in the operation of the car. In short, therefore, we find the Civil Code section imputing to the owner liability for negligence and the guest law adopted at the same time declaring that he shall not be held liable for negligence to a guest. We conclude, therefore, that the express and unambiguous language of section $1714\frac{1}{4}$ means that, in absence of some other relation such as that of master and servant or principal and agent, the owner of a vehicle who permits another to operate it is liable for injuries arising from the latter's negligence as that term is defined herein, but that he is not liable for injuries arising from the driver's wilful misconduct or intoxication. █ We also conclude that liability under section $141\frac{3}{4}$ of the Vehicle Act was limited to acts of the owner or driver arising from the intoxication or wilful misconduct by the owner or driver as the case may be, and that the owner who merely permits another to drive his car, and where no other relation exists, is not liable under either statute for injuries to a guest arising from the intoxication or wilful misconduct of the driver. For these reasons the complaint failed to state a cause of action against the respondent, and her demurrer was properly sustained.

The judgment is affirmed.

Edmonds, J., Shenk, J., Langdon, J., and Curtis, J., concurred.