[Civ. No. 43346. Second Dist., Div. Five. Oct. 28, 1974.]

CARL T. THOLE, Plaintiff and Appellant, v.
STRUCTURAL PEST CONTROL BOARD OF THE DEPARTMENT
OF CONSUMER AFFAIRS, Defendant and Respondent.

## COUNSEL

G. G. Baumen for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and Samuel E. Spital, Deputy Attorney General, for Defendant and Respondent.

## OPINION

**KAUS, P. J.** — Administrative mandate. Carl Thole, petitioner, appeals from a superior court judgment denying a writ of mandate, after respondent Structural Pest Control Board (Board), in a decision after reconsideration, suspended his license as a pest control operator for 60 days.

### FACTS

Since this disciplinary action involves six separate residences and a total of two dozen violations of four Business and Professions Code sections plus two Board regulations, some background about the regulatory scheme for structural pest control operators will be helpful.

Structural pest control operators are licensed by the state. (Bus. & Prof. Code, § 8560 et seq.)[1] Their methods of operations are also regulated. (§ 8500 et seq.) They are subject to discipline by the Board. (§ 8620 et seq.) Petitioner was subject to discipline for the following conduct: failure to prepare required reports (§ 8516); failure to complete an operation for the contracted price (§ 8638); commission of a grossly negligent act (§ 8642); and failure to comply with an applicable statute or regulation (§ 8641).

The applicable statute and regulations with which petitioner failed to comply concerned the contents of termite inspection reports. (§ 8516; Cal.

---

[1]All statutory references are to the Business and Professions Code.

Admin. Code, tit. 16, §§ 1900, 1991.)[2] Briefly, the operator must disclose and diagram termite infestation and structural conditions likely to lead to termite infestation (§ 8516, subds. (b) 6, 7, 8) and recommend corrective measures for the reported conditions (§ 8516, subd. (b) 9). Copies of these reports must be filed with the Board. (§ 8516, subd. (b).) After the work is completed, a notice of completion must be filed with the Board. (§ 8518.) The reporting requirements are amplified by Board regulations. (Reg., §§ 1900, 1991.) As relevant here, the regulations further define conditions likely to lead to infestation (reg., § 1990, subd. (h)) and specify acceptable corrective measures (reg., § 1991, subd. (a).)

Petitioner in some instances failed to report conditions or to recommend corrective measures, thus violating the reporting requirements. Some of these failures were considered to constitute grossly negligent acts. All of the failures violated the duty to comply with applicable statutes and regulations. Also, in some instances, where conditions were disclosed, petitioner filed completion reports stating falsely that corrective action had been completed; such conduct constituted breach of contract and in some instances gross negligence.

*The Violations*

The violations, involving six separate properties for which inspection or completion reports were filed, covered a period from July 1968 through September 1969.

(1) *Manning Property.*[3] Petitioner stipulated that his inspection report failed to describe and recommend corrective treatment for fungus in the subfloor area and in the abutments and for cellulose debris in the subarea. He stipulated that he filed a completion report which stated, contrary to fact, that he had installed concrete plugs to seal defects, fumigated the attic, and treated termites in the garage. Petitioner later corrected these conditions. He also stipulated that he failed to remove or cover termite pellets.[4]

(2) *Kilkea Property.* The Board's evidence showed that petitioner failed to report and recommend correcting a faulty grade level, that is, defective

---

[2]All references to regulations are to California Administrative Code, title 16.

[3]Both petitioner and the Board have submitted helpful tabular presentations of the accusations and evidence. Several items do not appear in the proposed decision which formed the basis both for the Board's decision and the court's judgment denying a writ. We assume that these accusations were found to be not true.

[4]Termite pellets are a euphemism for termite feces, the presence of which may indicate live termites.

flashwalls[5] and had filed a notice of completion that stated, contrary to fact, that work involving a shower installation had been completed; further, petitioner failed to replace damaged boards and timbers in the area of the shower.

(3) *Manhattan Property.* Petitioner stipulated that he failed to report and to recommend corrective action for cellulose debris in the subarea. The Board's evidence showed that petitioner filed a completion report representing, contrary to fact, that a porch had been sealed. He stipulated that he failed to cover or remove termite pellets. He later completed this work.

(4) *95th Street Property.* The Board's evidence showed that petitioner failed to cover or remove termite pellets after fumigating the attic.

(5) *Oaklawn Property.* The Board's evidence showed that petitioner failed to report excessive moisture on a garage slab roof.

(6) *Oakhurst Property.* Petitioner stipulated that he described but failed to recommend corrective action for faulty grade levels and that, contrary to his completion report, he failed to remove cellulose from the subarea. The Board's evidence showed that petitioner failed to report damage to joists and studs in the attic and failed to remove boards, timbers and other debris from the subarea.

*"Weight of the Evidence"*

We can quickly dispose of petitioner's contention that the trial court's—and the Board's—conclusions are not supported by the "weight of the evidence." First, substantiality, not weight, is the standard of review in this court. (E.g., *Patty* v. *Board of Medical Examiners,* 9 Cal.3d 356, 367 [107 Cal.Rptr. 473, 508 P.2d 1121].)[6] Second, interpreting petitioner's argument to mean there is no substantial evidence, the contention is patently without merit. Most of the facts alleged in the accusation were admitted by stipulation. Where the finding was based on the Board's evidence, petitioner's complaint is that the court and the Board listened to the wrong people.

---

[5]A flashwall is a low outer wall, partly underground, constructed when the outside grade is about equal to or higher than the foundation. (See reg., § 1990, subd. (h)(1).)

[6]The trial court exercised its independent judgment and reweighed the evidence.

*Vagueness*

■ Petitioner contends that Business and Professions Code section 8516 and California Administrative Code, title 16, sections 1990 and 1991, are unconstitutionally vague.

In particular petitioner points out that the parties disputed whether a report that there was fungus in the subfloor joists sufficiently disclosed fungus in the subfloor area (see § 8516, subd. (b) 7; reg. § 1990, subd. (k));[7] whether broken flashwalls (*ante,* fn. 5) meant a faulty grade level (see § 8516, subd. (b) 7; reg. § 1990, subd. (i)); and whether a concrete slab which served as both a patio and a garage roof was subject to inspection. (See § 8516, subd. (b) 7; reg. § 1990, subd. (j).) It appears to be petitioner's contention that whenever a word in a statute or regulation is subject to more than one interpretation, the statute or regulation is "void for vagueness." Fortunately, the law has never required perfection. (E.g., *Pacific Coast Dairy* v. *Police Court,* 214 Cal. 668, 676 [8 P.2d 140, 80 A.L.R. 1217]; cf. *Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co.,* 69 Cal.2d 33, 38 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373].)

*Gross Negligence*

■ Petitioner next contends that the specification of a "grossly negligent" act (§ 8642) as grounds for discipline is equally void for vagueness because no one knows what constitutes "gross negligence." Since the phrase is well-defined (e.g., *Weber* v. *Pinyan,* 9 Cal.2d 226, 231 [70 P.2d 183, 112 A.L.R. 407]), we assume that petitioner is contending that "grossly negligent" act in the context of the termite inspection business is unconstitutionally vague.

In addition to testimony by the various affected homeowners, the Board was furnished considerable expert testimony. Lewis Owen, a licensed pest control operator inspected the Manning property. Joseph Schwartz, a pest control operator with a master's degree in bacteriology, inspected the Kilkea property. Clarence Foster, a special investigator assigned almost exclusively to Structural Pest Control Board complaints, inspected the Kilkea, Manhattan, Oaklawn, Oakhurst and 95th Street properties.

Their testimony demonstrates that petitioner failed to observe what should have been obvious to an expert, failed to make necessary recommendations, and failed in some cases to follow up on those recommendations that were made, with actual or potentially serious consequences to the property.

---

[7] A slightly reorganized regulation was issued apparently after the briefs were filed.

The conclusion that these failures constituted "gross negligence" is, properly, treated as a question of fact left to the Board's expert determination (cf. *Martin* v. *Alcoholic Bev. etc. Appeals Bd.,* 52 Cal.2d 287, 293-294 [341 P.2d 296]; *McLaughlin* v. *Board of Medical Examiners,* 35 Cal. App.3d 1010, 1017-1018 [111 Cal.Rptr. 353]).

*Breach of Contract*

■ Several of petitioner's acts were found to constitute failures "to complete any operation or construction repairs for the price stated in the contract . . .," a violation of section 8638. Petitioner contends that he cannot be found in violation of that section, because in all cases he completed the work, and, in some cases performed work at considerable expense to himself.

Besides the fact that petitioner's version of his belated compliance is more favorable than the facts presented to the Board, that he eventually put matters aright is no defense, although doubtless the Board considered his efforts in imposing the mild penalty of only 60 days suspension. Moreover, petitioner's breach in all cases was no mere technical mistake. He reported, under penalty of perjury, that work on the Manning property was completed in January 1969; in fact, work was not completed until January 1971, after the homeowner had filed and petitioner had settled a lawsuit. The completion report on the Kilkea property was filed in April 1969; work was not completed. The completion report on the Manhattan property was filed in August 1968; the work was completed in April 1969. The completion report on the Oakhurst property was filed in January 1969; this work was never properly completed.

Petitioner relies on *Terminix Co.* v. *Contractors' State etc. Bd.,* 84 Cal. App.2d 167 [190 P.2d 24], for the proposition that a structural pest control licensee cannot be disciplined for breach of contract if the contract is eventually performed. His reliance is misplaced. The licensee in that case was disciplined under the Contractor's License Law (Bus. & Prof. Code, § 7000 et seq.) (84 Cal.App.2d at p. 169). The court pointed out: "The . . . alleged violations . . . must fall because an essential element of each of them, material prejudice or substantial injury, is lacking. . . . [Of] sections 7109, 7113, 7116 and 7119, such prejudice or injury is expressly required, save for section 7113." (*Id.* at p. 172.)[8] (See also, *Hutchinson*

---

[8]The relevant portions of the Business and Professions Code sections referred to in *Terminix* read as follows: "Wilful . . . disregard of plans . . . *prejudicial to another.* . . ." (§ 7109); ". . . any wilful or fraudulent act . . . in consequence of which another is *substantially injured.* . . ." (§ 7116); "wilful failure or refusal . . . to

v. *Contractors' State etc. Bd.*, 143 Cal.App.2d 628, 633 [300 P.2d 216] construing *Terminix* to require performance before an accusation is filed.)

The Structural Pest Control Act, however, contains no such requirement of pecuniary loss to support the charge or restitution as a defense. Rather, section 8638 states in full: "Failure on the part of a licensee to complete any operation or construction repairs for the price stated in the contract for such operation or construction repairs or in any modification of such contract is a ground for disciplinary action." Moreover, the history of section 8638 suggests that the Legislature recognized the importance of full and complete compliance in a timely fashion by deleting the phrase "Failure *in a material respect . . .*" from the statute as originally enacted. (Compare Stats. 1941, ch. 1163, § 1, p. 2907 with Stats. 1961, ch. 1192, § 3, p. 2926.)

The importance of compliance with the Structural Pest Control Act and supporting regulations was made clear in *Imperial Termite Control, Inc.* v. *Structural Pest Control Bd.*, 275 Cal.App.2d 685, 689 [80 Cal.Rptr. 156]: "The existence of wood-destroying pests and organisms, and the measures appropriate to their control, are, usually, beyond the expertise of the individual property owner; but, in the climatic and geological condition of California, those pests and organisms represent a special and serious danger to property and to the health and safety of the occupants of property."

Petitioner inadvertently underscores the importance of requiring prompt contract compliance, by pointing out that five of the six complaints were subsequent owners and not the parties with whom he had directly contracted.

The requirement of a termite inspection "is commonplace in the sale of homes" in California. (Real Estate Sales Transactions (Cont.Ed.Bar 1967) § 12.8, p. 466; see also, § 6.73 et seq.) Thus, combined with the problem of the lack of the property owner's expertise, noted in *Imperial Termite Control,* is the problem that failures of a structural pest control licensee to note deficiencies, to recommend corrections, to perform the contracted work and to report work not completed, are not visited upon the

---

prosecute a construction project . . . *causing material injury* to another . . . ." (§ 7119. Italics added.) Given to explicit inclusion of prejudice or loss in the quoted sections, the court in *Terminix* reasonably construed the requirement to be "implicit" in the remaining section, 7113. (84 Cal.App.2d at p. 172.)

seller who might have some idea of lurking problems, but upon the unwary buyer.[9]

## CONCLUSION

The evidence that petitioner failed, in six "inspections" each involving several items to inspect or to recommend or to perform, or all of the above, is overwhelming. The statutes under which petitioner was disciplined—Business and Professions Code sections 8516, 8638, 8641, 8642—and relevant regulations, California Administrative Code, title 16, sections 1990 and 1991 are not unconstitutionally vague, as written or as applied.

The judgment of the trial court denying the peremptory writ of mandate is affirmed.

Stephens, J., and Ashby, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 26, 1974.

---

[9]We do not suggest that the buyer has no recourse against the seller; however, a salutory effect of licensing and disciplining experts is to minimize the need for litigation.